IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CR-131-1BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| DESMOND SIMPSON | ) | |

This cause comes before the Court on defendant's motions to dismiss his indictment and for hearing pursuant to *Franks v. Delaware*. The government has responded and the matters are ripe for ruling. For the reasons discussed below, defendant's motions are denied.

<u>BACKGROUND</u>

Defendant, Desmond Simpson, has been charged in a four count indictment which includes two counts of robbery in violation of the Hobbs Act 18 U.S.C. § 1951, one count of knowingly and intentionally using and carrying a firearm during and in relation to a crime of violence, and one count of knowingly and intentionally using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

The first robbery alleged occurred on April 20, 2012, in Wilmington, North Carolina. An order for delivery to 1129 S. 12th Street was called into the China Wok restaurant. When the China Wok delivery driver attempted to deliver the food order, the address did not exist. The driver then attempted to deliver to 1129 Greenfield Street when he was approached by a black male holding a handgun with a bandana covering part of his face. The assailant robbed the delivery driver of a cell phone, car keys, and twenty-four dollars in cash.

The second robbery alleged occurred on April 25, 2012, also in Wilmington, North Carolina. An order for delivery was called into the Papa Johns pizza restaurant. When the Papa Johns delivery driver attempted to deliver the food order to 1107 South 4th Street, the driver was approached by a black male who put a handgun in the driver's face. The delivery driver attempted to resist, and the assailant hit the delivery driver in the head with the butt of the gun. The delivery driver then threw the money that was in his pockets, approximately fifty dollars, at the assailant and was able to return to his vehicle.

The victim of the April 20th robbery described his assailant as approximately 5'7" to 5'8" tall, medium build, in his twenties, wearing a black shirt, blue jeans, and white bandana over the bottom half of his face, and sunglasses. The victim of the April 25th robbery described his assailant as 5'8" to 5'9" tall, medium to dark complexion with short dredlocks, wearing dark pants and a red shirt. Following the second robbery, a man flagged down police and notified them that he has seen a man with shoulder length dredlocks jump his fence into the witness's backyard, whereupon he took off a red shirt and threw it into the neighbor's yard. Police collected the red shirt, as well as a pair of sunglasses that were found near the delivery driver's hat where the struggle between the driver and assailant had taken place.

Following an investigation into these and two other robberies, Special Agent Eddie Eubanks obtained a search warrant in order to take a sample of Mr. Simpson's DNA for comparison purposes. In the affidavit, Special Agent Eubanks presented the magistrate with the details of the April 20th and 25th robberies in addition to details of two similar robberies that had taken place in Wilmington, North Carolina on May 6 and 10, 2012. On May 6th, a different driver for the same Papa Johns whose driver had been robbed on April 25th was robbed at gunpoint while making a delivery of two hundred dollars and his car by a black male, 6'1" tall,

2

wearing baggy pants, a red shirt, and a red bandanna across his face. On May 10th, a different driver from the same China Wok restaurant was robbed at gunpoint while making a delivery by a black male, 5'10" to 6'0" tall, about 190-210 pounds with short dredlocks wearing a black shirt and a blue and white bandanna across his face. It had been determined that that both calls for delivery that resulted in the robberies alleged in the instant indictment were made from the same telephone number that was traced to an apartment being rented by Arlease Cromartie, who told investigators that Mr. Simpson is her boyfriend and that he stays with her regularly and uses her phone.

DNA collected from a shirt and sunglasses from the April 25th Papa Johns robbery matched the DNA of Mr. Simpson, and DNA collected from two bandannas from the May 10th Papa Johns robbery matched another person believed to be a friend or family member of Mr. Simpson.

DISCUSSION

I.    MOTION TO DISMISS

Mr. Simpson seeks to dismiss the indictment against him pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure for lack of subject matter jurisdiction. Mr. Simpson argues that applying 18 U.S.C. § 1951 to two garden-variety robberies results in the federal invasion of North Carolina's sovereign domain – the prosecution of classic state law crimes – in violation of the Tenth Amendment of the United States Constitution. Consequently, Mr. Simpson argues, section 1951 is unconstitutional as applied to Mr. Simpson in this case and the Court lacks subject matter jurisdiction over the matters charged in the indictment.

The Hobbs Act prohibits obstructing, delaying, or affecting commerce or the movement of any article or commodity in commerce in any way or degree by, among other things, robbery. 18

3

U.S.C. § 1951. The broad language of the Hobbs Act has been construed to manifest Congress' intent to use the limits of its constitutional power to punish interference with commerce by robbery, physical violence, or extortion. *Stirone v. United States*, 361 U.S. 212, 215 (1960). This has long been interpreted as requiring that an act of robbery, physical violence, or extortion need only have a minimal effect on commerce, and the government need not demonstrate that a defendant intended that commerce be affected nor proffer evidence that commerce was in fact affected in order to for a charge under the Hobbs Act to be appropriate. *United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976); *see also United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003) ("We have therefore found the Hobbs Act to apply whenever the instant offense has at least a "minimal" effect of interstate commerce.").

Mr. Simpson rests much of his argument on three Supreme Court cases interpreting the limits of Congress' power under the Commerce Clause, specifically *United States v. Lopez*, 514 U.S. 519 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); and *Jones v. United States*, 529 U.S. 848 (2000). Unlike the statute at issue in *Lopez* and *Morrison*, there is a jurisdictional element present in the Hobbs Act, and *Lopez* and *Morrison* have been held not be inconsistent with the minimal effect on interstate commerce requirement for Hobbs Act crimes. *Williams*, 342 F.3d at 354 (*Lopez* and *Morrison* "do not disturb our continued application of this 'minimal effects' standard."); *United States v. Tate*, 163 F.3d 600 (4th Cir. 1998) (unpublished) (listing cases holding same); *United States v. Milton*, 153 F.3d 724 *2 (4th Cir. 1998) (unpublished) (defendant's *Lopez* and Tenth Amendment challenge to Hobbs Act robbery conviction fails). Mr. Simpson's reliance on *Jones* further presents the Court with no basis upon which to stray from the minimal effects standard. The *Jones* court narrowly construed the federal arson statute at issue, holding that Congress' use in the statute of the phrase "*used in* an activity affecting

4

commerce" requires that the property burned be actively employed in commerce or an activity affecting commerce, and not only passively connected to commerce. 529 U.S. 848, 855; 859 (2000). The Hobbs Act does not contain similarly limiting language, and this Court is unaware of any court to have interpreted *Jones* to imply any limiting or narrowing of the Hobbs Act. *See United States v. Davis*, 473 F.3d 680, 682 n.1 (6th Cir. 2007); *United States v. Gray*, 260 F.3d 1267, 1270 (11th Cir. 2001) ("nothing in *Morrison* or *Jones* alters our previous conclusion that, to convict a defendant for Hobbs Act robbery, the Government must prove a minimal, but not substantial, effect on interstate commerce.").

Mr. Simpson's further contends that the alleged robberies did not sufficiently affect interstate commerce to fall under the Hobbs Act. While courts have identified circumstances where a robbery which affects only private or personal activities or individuals does qualify for Hobbs Act jurisdiction, those cases are inapposite here. For example, the Sixth Circuit has found that in order to demonstrate that the robbery of a private citizen has a realistic probability of affecting commerce, the government must demonstrate either that "the number of individuals victimized or the sum take was so large that there was [a] cumulative effect on interstate commerce." *United States v. Wang*, 222 F.3d 234, 247 (6th Cir. 2000).

Mr. Simpson does not dispute that China Wok and Papa Johns restaurants are engaged in interstate commerce, nor does he contend that had someone perpetrated a robbery of either restaurant Hobbs Act jurisdiction would be present. Mr. Simpson is alleged to have robbed delivery drivers from each of these restaurants. The drivers were present for the robberies because Mr. Simpson had allegedly called the restaurants and placed orders for delivery, luring the drivers from the restaurant premises to an area selected for the robbery. The delivery drivers were in fact attempting to engage in food deliveries when they were robbed; Mr. Simpson does

5

not contend that, like the victims in *Wang*, the restaurant employees were robbed when they were in their homes or on their way home after their shifts had ended.

Because the delivery drivers were engaged in the business activities of their employers when they were robbed, the robberies are appropriately considered as having depleted the assets of their respective employers' businesses and not merely as "garden-variety" state law robberies of private citizens. *See United States v. Grant*, 247 F. App'x 749, 751 (6th Cir. 2007) (robbery of a pizza delivery driver who was targeted because of his position as a delivery driver is an act not directed at the individual but at the business entity). It is for this reason that the amount of money taken from each driver is not relevant; because these robberies were targeted at business entities and not merely individuals, the relevant inquiry remains whether the class of act, not the individual acts alleged, have an impact on interstate commerce, *Williams,* 342 F.3d at 355, and "even a small amount of money can meet the *de minimus* standard." *Grant*, 247 F. App'x at 752.

Accordingly, Mr. Simpson has not demonstrated that the Court lacks jurisdiction over the Hobbs Act charges alleged in his indictment, and his motion to dismiss is therefore denied.

II.    MOTION FOR HEARING PURSUANT TO *FRANKS V. DELAWARE*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Where a warrant has been issued and served, review of the probable cause determination by the issuing judicial officer is to be shown "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). To be entitled to an evidentiary hearing on the propriety of the warrant, the defendant must satisfy the two part test set out in *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

6

In *Franks*, the Supreme Court held that "where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in [a] warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. 154, 155-56 (1978). A defendant may also show that a *Franks* hearing is warranted based on allegations of omissions of material facts from a warrant affidavit. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008).

The burden on a defendant to demonstrate the need for a *Franks* hearing is high, and is even higher where a defendant relies on omissions rather than false affirmative statements. *Id.* at 454-55. This is because "an affidavit offered to procure a search warrant cannot be expected to include every piece of information gathered in the course of an investigation." *Id.* at 455 (quotation and citation omitted). Thus, a defendant must demonstrate than an omission in the affidavit was "the product of a deliberate falsehood or of reckless disregard for the truth" in order to be entitled to a *Franks* hearing. *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (quotation and citation omitted).

Mr. Simpson points to three pieces of evidence that he contends were omitted from the warrant affidavit: information about Mr. Simpson's physical appearance, that the victim of the April 20th robbery viewed a photographic lineup and failed to identify Mr. Simpson as his assailant, and that the fingerprints taken from the stolen car of one of the robbery victims failed to match Mr. Simpson's fingerprints. Importantly, Mr. Simpson does not contend that any omission was the product of a deliberate falsehood or was done in reckless disregard for the truth nor has he provided any affidavits or other support for such contention. *Tate*, 524 F.3d at 455. Absent any suggestion to the contrary, the agent's failure to include any of the information

7

identified by Mr. Simpson was at worst negligent, which is insufficient to warrant a *Franks* hearing. *Franks*, 438 U.S. at 170.

Moreover, the inclusion of the omitted material in the affidavit would not defeat probable cause. *Colkley*, 899 F.2d at 301 (material which *may* have affected the outcome of the probable cause determination is not sufficient to demonstrate need for *Franks* hearing). Probable cause exists where, as a result of a practical, common-sense consideration of all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The statements of witnesses regarding the assailant's height in these robberies, not surprisingly, varied, and while none were exactly consistent with Mr. Simpson's true height, the differences were not so great so as to affect the probable cause determination. *Id.* at 302. Nor would the inclusion of information regarding one witness' failure to identify Mr. Simpson in a photographic lineup or the absence of Mr. Simpson's fingerprints in one of the victims' cars necessarily have defeated probable cause, as no other positive identifications were made and other evidence provided in the affidavit, such as the connection between Mr. Simpson and the owner of the cell phone numbers used to place the food orders, provided sufficient probable cause upon which the warrant could issue. *See id.*

Thus, because Mr. Simpson has failed to allege, much less make a substantial preliminary showing, that the agent deliberately omitted information from the affidavit in reckless disregard for the truth, nor has he demonstrated that with the omitted information would defeat probable cause, his request for a *Franks* hearing is denied.


CONCLUSION


8

For the foregoing reasons, defendant's motion to dismiss [DE 22] and motion for hearing pursuant to *Franks v. Delaware* [DE 21] are DENIED.

SO ORDERED, this ___1___ day of May, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9